UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 04-90040 |
| Plaintiff, | CIVIL ACTION NO. 09-11044 |
| v. | DISTRICT JUDGE MARIANNE O. BATTANI |
| JOSE CRUZ, | MAGISTRATE JUDGE VIRGINIA M. MORGAN |
| Defendant. | |
| _____/ | |

**REPORT AND RECOMMENDATION TO DENY
§ 2255 MOTION TO VACATE**

**I.   INTRODUCTION**

This is a *pro se* 28 U.S.C. § 2255 case that comes before the court on movant's Motion to Vacate, Set Aside, or Correct the Sentence (D/E #148) and Amended Motion to Vacate (D/E #157). The matter has been referred to the undersigned for a Report and Recommendation. For reasons stated below, the court recommends that the motion to vacate be **DENIED**.[1]

**II.   BACKGROUND**

This case arose out of an FBI investigation of gang activity and drug sales in the Detroit area. It was the government's position at trial that the movant and his co-conspirators would rob

---

[1] In August 2009, movant filed a Motion for Summary Judgment (D/E #161) alleging that the government had not responded to his motion. It appears that movant had not received a copy of the government's July response, D/E #158, in opposition to the motion. The government noted the same and served a copy on the movant. Thus, this court deems D/E #161 to be a request for service and it is denied as moot.

"drug houses" as a way to make quick money. (Tr. II, p. 15).[2] They would take large quantities of controlled substances from these drug houses and later they would sell the drugs. (Tr. II, p. 15). The government also alleged that the robbers used guns on more than one occasion and at least one time with a Molotov cocktail. (Tr. II, p. 16-17).

Movant was indicted on three counts: one count of conspiracy to distribute and distribution of marijuana, 21 U.S.C. § 841 (b)(1)(C) and 21 U.S.C. § 846, one count of use of an explosive device during or in relation to a drug trafficking crime, 18 U.S.C. §924 (c)(1)(B)(ii), and one count of use of a firearm during or in relation to a drug trafficking crime, 18 U.S.C. §924 (c)(1)(A)(i). (D/E #11). Movant's jury trial began on November 15, 2005, and he was tried with his co-defendants: James Cherry, Benjamin Booth, and Marshall Miller. Miller pleaded guilty during the trial and Booth was acquitted. The jury convicted Cherry and movant on all counts.

Movant appealed to the Sixth Circuit, which affirmed his conviction. He raised issues related to failure to instruct on a lesser-included offense and vouching for a witness. He did not raise in the Sixth Circuit any of the issues currently before the court.[3]

---

[2] For ease of reference, the transcripts provided by the parties in this case will be referred to as follows:
    Tr. I  =    Trial—D/E #130, Volume I, November 15, 2005
    Tr. II  =    Trial—D/E #131, Volume II, November 16, 2005
    Tr. III  =    Trial—D/E #132, Volume III, November 17, 2005
    Tr. IV  =    Trial—D/E #133, Volume IV, November 18, 2005
    Tr. V  =    Trial—D/E #134, Volume V, November 21, 2005
    Tr. VI  =    Trial—D/E #135, Volume VI, November 22, 2005

[3] The government states that movant raised Issue One (insufficient evidence) in his appeal. The government is incorrect. It was defendant Cherry who raised this issue.

### A. Motion to Vacate, Set Aside, or Correct Sentence

On March 18, 2009, movant filed a Motion to Vacate, Set Aside, or Correct Sentence (D/E #148) raising three issues, and then in June, 2009, he filed an amended motion (D/E #157) raising two additional issues. The court will consider all five issues.[4]

1. The jury erred by convicting on Count I where there was insufficient evidence;

2. The evidence presented to sustain a conviction on Count I amounted to a variance of what was charged in the indictment; and

3. Movant was denied effective assistance of counsel by the court denying him his choice of counsel and for his attorney revoking a request for multiple conspiracies jury instructions.

In his amended motion to vacate, movant raises two more issues:

1. Movant was denied due process of the law at sentencing when he was convicted twice under the same statute.

2. Movant was denied effective assistance of counsel by his trial counsel's failure to object to the government's use of multiple sentences under the same statute.

On July 7, 2009, respondent filed an answer addressing both the motion and amended motion to vacate (D/E #158).

### III. STANDARD OF REVIEW

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

---

[4] The court considers all issues because the movant is pro se.

A person seeking relief under § 2255 "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. U.S.*, 268 F.3d 346, 351 (6th Cir. 2001). To prevail under § 2255, a fundamental defect must exist which results in complete injustice or in violation of due process. *Nagi v. U.S.*, 90 F.3d 130, 133-34 (6th Cir. 1996). Further, good cause and actual prejudice must be shown if these issues were not brought up on appeal. *Harris v. Reed*, 489 U.S. 255, 258 (1989).

## IV. DISCUSSION

### A. Issues I – IV are Procedurally Defaulted

Issues I through IV are: (1) insufficient evidence on Count I; (2) evidence presented to sustain a conviction on Count I amounted to a variance; (3) the district court abused its discretion by denying movant his choice of counsel; and (4) movant was denied due process by being charged twice with the same statute. Movant raised none of these issues on direct appeal. Any issue not raised on appeal is procedurally defaulted and is considered waived by the defendant. *Harris*, 489 U.S. at 258. For this court to review a procedurally defaulted claim that has been waived, good cause and actual prejudice must exist or there has to have been a complete "miscarriage of justice." *Id.* Movant must explain cause, that is, the reason the issue was not addressed on appeal and explain further the harm done to him, in order to establish prejudice. *United States v. Frady*, 456 U.S. 152, 168 (1982). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Id*. at 166.

In this case, movant has not demonstrated cause or prejudice for his failure to do so and consequently, the issues are barred from judicial review. Even if movant can show cause for not

addressing these issues in trial and on appeal, he cannot establish actual prejudice and is not entitled to relief. With the exception of ineffective assistance of counsel, all of the issues in the motion are barred from review on the grounds that they are procedurally defaulted.

**1. Appellate Counsel's Failure to Raise the Claims Does Not Establish Good Cause**

Failure of counsel to raise claims that the movant thinks are important are not sufficient to show cause for procedurally defaulted claims. *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). The movant has the duty to show that the appellate counsel "was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *Id.* Counsel's failure to assert every claim does not qualify as a non-functioning appellate counsel. *Id.* at 683. Appellate counsel's failure to raise claims is not considered unreasonable. *Smith v. United States*, 19 Fed.Appx. 346, 348 (6th Cir. 2001). The decision to not raise claims can be based on strategy and counsel is still considered effective. *Id*.

**2. Movant Has Failed to Show Prejudice**

To show prejudice, movant must prove that actual harm was done. *Frady*, 456 U.S. at 168. A review of the merits of the each of the first four claims clearly shows that movant suffered no actual prejudice.

**a. Claim of Insufficient Evidence.**

Movant asserts that the evidence presented by the prosecution was insufficient to support his conviction for Count One, a violation of 21 U.S.C. § 846, the conspiracy to violate 21 U.S.C. § 841(a)(1).

The distribution statute states: "Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C.

§ 841(a)(1). The conspiracy statute states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

The elements to a conspiracy are: (1) an [objective] to be accomplished; (2) a plan or scheme embodying means to accomplish that [objective]; and (3) an agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the [objective]…by any effectual means. *U.S. v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009).

In considering whether there was sufficient evidence for any rational trier of fact to find proof beyond a reasonable doubt as to every element of the crime, we consider all of the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This creates a "very heavy burden" on the movant to prove an insufficiency of the evidence claim. *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000). Only minimal evidence is needed to connect a distribution claim once a conspiracy has been proven. *Id*. The courts will not review all of the information given at trial for the jury to review an insufficiency of the evidence claim. *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994).

A review of the trial shows that the evidence was more than sufficient. At the trial, FBI Special Agent Joseph Callahan testified that he was the case agent investigating gang activity in the Detroit area. (Tr. II, p. 48). He testified that movant was part of the "Mendez organization of

the Latin Counts gang."[5] The evidence was obtained from cooperating witnesses (movant's co-conspirators), a wiretap, and consensually recorded conversations. (Tr. II, p. 48-49).

Special Agent Callahan testified that over the course of his investigation that he intercepted over 300 violation calls. (Tr. II, p. 49-50). According to Special Agent Callahan, most of the violation calls were in regard to drug trafficking and the rest dealt with murder, auto theft, and home invasions. (Tr. II, p. 50). The goal for the FBI with the Mendez organization was to stop the multiple drug related home invasions from the gang. (Tr. II, p. 52). Callahan testified that the primary cooperating witness, Emanuel Raynor, consented to the FBI recording his conversations with individuals with whom he had previously committed prior crimes in an effort to get those individuals to discuss those prior crimes. (Tr. II, p. 55). The information led to a 29-person indictment, which included movant. (Tr. II, p. 55-56). Two specific home invasions were the subjects of the indictment against movant: one at 598 Bayside Street and one at Stone Street. (Tr. II, p. 61, 64-64).

Here, the conspiracy and distribution involved a drug trafficking scheme in which the movant participated or aided in home invasions. As shown above, Raynor testified that the movant sold drugs (Tr. IV, p. 83) and Contreras testified that movant received one pound of marijuana from the Bayside home invasion. (Tr. III, p. 127). The degree of the movant's involvement in each of the two home invasions is sufficient for a rational jury to conclude that he was guilty.

Viewing the above evidence in a light most favorable to the prosecution, this court finds that a reasonable jury could find (and in fact did find) the movant was involved in the planning,

---

[5] Mario Mendez is thought by the FBI to be the leader of this section of the Latin Counts gang, but was not included in this trial.

was involved in gathering the weapons for the home invasions, and was a drug dealer. The movant's claim of insufficient evidence is therefore without merit. Thus, there is no prejudice because movant's insufficient evidence claim is meritless and would have been rejected on appeal.

### i. Bayside Street Home Invasion

Santiago Santillana testified that he was a drug dealer and that he would gather information about drug stash houses from his drug buyers. (Tr. IV, p. 17). Santillana stated that he would later relay the stash house information to Mario Mendez and Emanuel Raynor for home invasions. (Tr. IV, p. 16-17). Emanuel Raynor testified that he received information about a stash house on Bayside and that he talked to Cherry about doing a home invasion on the Bayside address. (Tr. IV, p. 41). Anthony Contreras testified that he, Cherry, Booth, Rodriguez, Raynor and movant conspired to do a home invasion for drug trafficking and that Cherry and movant were involved in the planning.[6] (Tr. III, p. 13).

According to Contreras, movant and Jeffrey Rodriguez went to the corner gas station to purchase gasoline for a Molotov cocktail to gain access into the home at 598 Bayside Street. (Tr. III, p. 14-15). Raynor testified that the Molotov cocktail was needed because the Bayside house was barricaded. (Tr. IV, p. 94). Jeffrey Rodriguez testified that he went with movant to a gas station to fill a plastic bottle with gasoline for the Molotov cocktail. (Tr. V, p. 14). Raynor stated that Cherry came to Detroit with the weapons for the home invasion and that Cherry made the

---

[6] These cooperating witnesses were co-defendants that accepted plea offers from the government to testify in this trial in exchange for reduced sentences: Anthony Contreras, Santiago Santillana, Emanuel Raynor, Mario Mendez, Jeffrey Rodriguez, and Marvin Watson.

Molotov cocktail.[7] (Tr. IV, p. 93). Contreras stated that Cherry threw the Molotov cocktail through the window of the Bayside house and that he, Cherry, Rodriguez, Booth, and "Tony" were all at the Bayside home invasion.[8] (Tr. III, p. 15-17).

Rodriguez stated that movant and Raynor stayed back at movant's house on Military Street during the Bayside home invasion. (Tr. V, p. 15). Movant did not participate in the actual home invasion on Bayside, but he gave his gun to Rodriguez to use. (Tr. IV, p. 94). Contreras testified that after the Bayside home invasion, they went to movant's house and divided the marijuana that was taken from the home. (Tr. III, p. 16-18). Raynor testified that 20 pounds of marijuana was taken from Bayside and that all that were involved in the conspiracy took some of the marijuana. (Tr. IV, p. 97-98). Rodriguez also testified that everyone was able to take some of the marijuana from the home invasion. (Tr. V, p. 20). Contreras testified that movant received one pound of marijuana from the Bayside home invasion. (Tr. III, p. 127).

Contreras said that the reason for doing these home invasions were for drugs and money, and that all involved parties agreed to participate. (Tr. III, p. 58, 63). Santillana testified that movant gave him two pounds of marijuana for the information about the Bayside stash house. (Tr. IV, p. 22). Santillana stated that he sold the two pounds of marijuana that he received. (Tr. IV, p. 23).

### ii. Stone Street Home Invasion

Emanuel Raynor also testified about the incident on Stone Street. Raynor stated that he sold large quantities of marijuana to James Cherry. (Tr. IV, p. 80). Raynor also stated that

---

[7] Raynor testified that Cherry brought the weapons but later states that Cherry only had a pump shotgun. (Tr. IV, p. 95).

[8] "Tony" has not been identified or located.

movant sold drugs. (Tr. IV, p. 83). Raynor testified that movant received information on a stash house on Stone Street and that movant asked Raynor to recruit people for a home invasion. (Tr. IV, p. 84). Marvin Watson testified that he, movant, Miller, and Cherry participated in the Stone Street home invasion. (Tr. V, p. 61, 64). Raynor stated that he believed that the Stone Street home contained several bags of marijuana and 300-400 ecstasy pills. (Tr. IV, p. 86).

Raynor also testified that movant had taken a .32 gun to the Stone Street home invasion. (Tr. IV, p. 88). Watson stated that movant had a gun and attacked people inside the house. (Tr. V, p. 65-66). Only 9-10 bags of marijuana and an AK-47 gun were found at Stone Street and the marijuana was split between everyone involved. (Tr. IV, p. 90). Watson also testified that they smoked the marijuana that was found in the home because there was not enough to sell. (Tr. V, p. 67).

During closing arguments, the prosecutor stated:

> And in this particular case, I think that the evidence has established that the particular conspiracy for the most part consisted of James Cherry and Jose Cruz. They were not participants in both of the home invasions. They were the participants in the conspiracy to possess and get a significant amount, significant amount of drugs to sell.
>
> So in terms of establishing an agreement, I believe that the testimony is sufficient for you to find beyond a reasonable doubt that there was an agreement between the individuals, the defendants that are seated here. That the agreement was to do something unlawful. That is was to break into homes. To possess controlled substances, intending to distribute them later. And that the participants, Mr. Booth, Mr. Cruz and Mr. Cherry were part of the agreement knowingly. It wasn't an accident, it wasn't a mistake that they were there.
>
> And in terms of a slight connection, Mr. Cruz had more than a slight connection to this. He may not have participated in the actual home invasion itself. But the testimony from all the witnesses there was that Mr. Cruz himself went with Jeffrey Rodriguez, purchased the gasoline to make the Molotov cocktail, and then either made it

>himself or somebody made it and handed it to James Cherry, who
>then took it and used it. That is a connection to the conspiracy.
>That is a knowing act to help the conspiracy or the agreement
>further their purpose.

(Tr. VI, pp. 10-12).

With respect to the elements of the conspiracy charges against movant, the trial court instructed the jury that:

>For you to find the defendants guilty of this crime, you must be convinced
>that the government has proved each of the following beyond a reasonable
>doubt:
>
>First, that two or more persons, directly or indirectly, reached an
>agreement to possess with intent to distribute, and to distribute, marijuana.
>
>Second, that the defendants knew of the unlawful purpose of the
>agreement.
>
>Third, that the defendants knowingly joined in the agreement. That is, with
>the intent to further its unlawful purpose.
>
>With regards to the [first element], a criminal [agreement the] government
>must prove two or more persons conspired, or agreed, to cooperate with
>each other to commit the crime of possession with intent to distribute and
>to distribute marijuana.
>
>This does not require proof of any formal written or spoken agreement, or
>that everyone agreed on all the details. But proof that people simply met
>together from time to time and talked about common interests, or engaged
>in similar conduct, is not enough. You can consider these things in
>deciding whether the government has proved criminal agreement, but
>without more they are not enough.
>
>What the government must prove is that there was a mutual understanding,
>either spoken or unspoken, between two or more people, to cooperate with
>each other to commit the crime of possession with intent to distribute and
>to distribute marijuana. This is essential.

(Tr. VI, pp. 71-72).

### b. Variance to the Charges in the Indictment

The movant claims that the evidence presented to prove conspiracies were a variance to what the indictment charged and that those conspiracies did not involve him. Congress's intention was to have a reasonable rule for variances, which is "upon examination of the entire record, [if] substantial prejudice does not appear, the error must be regarded as harmless." *Berger v. U.S.*, 295 U.S. 78, 82 (1935). Further, where the allegation and the proof substantially correspond, a variance does not exist to mislead the jury." *Id.* at 83. This claim is also procedurally defaulted.

The Fifth Amendment ensures that a defendant is only tried on the crimes listed on an indictment. *United States v. Manning*, 142 F.3d 336, 339 (6th Cir. 1998). The evidence presented and instructions given to the jury may materially alter the information on the crime being charged and amount to a variance. *Id.* However, a substantial likelihood that a defendant is charged for a crime not listed on the indictment must exist to prevail on this claim. *Id.* To prove that there was a substantial likelihood, the movant must show prejudice in his defense or that the trial was unfair as a result. *Id.*

Here, the facts given at trial to prove conspiracy did not differ materially from those in the indictment. A drug distribution conspiracy is described as:

> Drug distribution conspiracies are often "chain" conspiracies such that agreement can be inferred from the interdependence of the enterprise. One can assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell.

*Deitz*, 577 F.3d at 678.

The government argues that the movant is simply making a "back door attempt to re-argue the denial of his severance motion." (D/E #158). The government also argues that the

conspiracy evidence relates individually to each defendant involved in the crime, which does not amount to multiple conspiracies. (D/E #158).

Several Latin Counts gang members were involved in a conspiracy to distribute drugs involved a drug trafficking scheme that included performing home invasions. Raynor testified that the movant sold drugs (Tr. IV, p. 83) and Contreras testified that movant received one pound of marijuana from the Bayside home invasion. (Tr. III, p. 127). It does not matter that Raynor relayed the drug stash house information on Bayside Street to someone other than the movant if the movant was involved in the home invasion. Further, movant was in direct contact with Raynor regarding the Stone Street home invasion, and as such, he is equally involved in the conspiracy. The degree of the movant's involvement in each of the two home invasions is sufficient to conclude that he was guilty of being involved in this one conspiracy.

The movant was involved and convicted for the conspiracy listed in the indictment. There is no information given by movant to show cause or prejudice for not giving a multiple conspiracy instruction to the jury. The jury instruction argument would not have had an effective application at trial or on appeal and therefore this claim lacks merit. There is no prejudice for failure to raise on appeal. Absent any showing that cause and prejudice, the jury instructions can be barred on that alone.

### c. Attorney's Request to Withdraw as Counsel and Movant's Request for Choice of Counsel.

Movant argues that the trial court abused its discretion by denying him his choice of counsel and by denying his counsel's motion to withdraw. First, the movant does not have a right to choose a particular attorney when receiving court appointed counsel. *United States v. White*, 451 F.2d 1225, 1226 (6th Cir. 1971). The trial court has the discretion to change the appointed

counsel once during the trial. *Id*. Further, there is no abuse of discretion for the trial judge refusing to replace court appointed counsel at any time during the trial. *Id*.

The constitutional concern is whether a defendant received an effective advocate, but movant does not argue that in this issue. *Ray v. Curtis*, 21 Fed. Appx. 333, 335 (6th Cir. 2001). There is no constitutional violation merely because the defendant is not allowed to choose his counsel. *Id*. As described above in the standard of review, § 2255 requires a constitutional violation.

Prejudice cannot be shown because even if the appellate counsel would have raised this issue on appeal, it would have been rejected. After analysis, this claim is without merit and no constitutional error exists.

### d. Due Process Not Denied in Sentences Under 924(c)

The movant claims that there was a violation of his due process rights when he was sentenced twice under the same statute. Under 18 U.S.C. § 924(c), the defendant may be charged once for each incident in violation of this statute.[9] The relevant portion of the statute states:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

18 U.S.C. § 924(c)(1)(A).

---

[9] Part of 18 U.S.C. § 924 was found to be unconstitutional after movant was sentenced; however, no portion of § 924(c) was affected and the language in this section of the statute remains unchanged.

14

The indictment charged movant with acts under § 924(c) at two separate home invasions on separate occasions: one at 598 Bayside Street and one at Stone Street. (Tr. II, p. 61, 64-64). The evidence established that movant was involved in both of these home invasions. For Bayside, movant was not present but purchased the gasoline for the Molotov cocktail so that his co-conspirators could gain access into the drug stash house at that location. (Tr. III, p. 14-15). Also for Bayside, movant provided his gun to Rodriguez to use during the Bayside home invasion. (Tr. IV, p. 94). Movant was convicted of one count of § 924(c) and sentenced to 30 years, the higher minimum sentence based on the Molotov cocktail; he did not receive an additional sentence for the gun he gave to Rodriguez. Movant's second violation of § 924(c) resulted from a separate incident, on another day in 2001, when movant participated in the Stone Street home invasion using a gun. (Tr. IV, p. 88) For this, he received five years. In his sentencing challenge, movant contends that the district court erred in counting the two convictions as separate offenses for purposes of 18 U.S.C. § 924(c) because he was also convicted of conspiracy and also seems to argue that the two convictions should be counted as one. Movant is wrong. First, it should be noted that the district judge sentenced movant to only one day on the conspiracy count. He received five years on one § 924(c) count and 30 years on the other. Section 924(c) mandates consecutive sentences for second or subsequent offenses. 18 U.S.C. §§ 924(c)(1)(C). This circuit has reviewed the same argument in a carjacking context in *United States v. Fekete*, 535 F.3d 471, 482 -483 (6th Cir, 2008). The court stated that "Sections 924(c)(1)(A), (C) & (D) clearly provide that two firearm convictions in connection with separate underlying felony offenses must be counted as independent convictions, carrying consecutive sentences of 7 and 25 years." *Id.* The *Fekete* court also quoted *Deal v. United States,* 508 U.S. 129, 136-137(1993), where the Supreme Court held that where a defendant is charged and

convicted of multiple § 924(c) offenses in the same case, each additional conviction is "a second or subsequent conviction" within the plain meaning of the statute. *United States v. Fekete*, 535 F.3d 471, 482 -483 (6th Cir, 2008)  The circuit court found no reason why the fact that Fekete was also convicted of conspiracy to commit multiple carjackings would alter the propriety of sequentially counting the two separate carjacking convictions for the purposes of sentencing. *Id*. at 482-483.  Thus, district court's sentencing determination in movant's case was entirely appropriate.

Nor is there ineffective assistance of counsel shown because there was no prejudice.  On appeal the court would have found that two separate offenses may be charged for each offense regardless of whether the charges stem from the same statute. Therefore, since none of the issues I-IV are shown to have resulted in prejudice, and no good cause is shown for failure to raise them, they are procedurally defaulted and barred from review.

## B. Issue V: Ineffective Assistance of Trial Counsel Does Not Merit Relief

Movant claims that his trial counsel at the trial was ineffective. Ineffective assistance of counsel does not need to be raised on appeal and can be brought into a collateral proceeding with § 2255. *Massaro v. U.S.*, 538 U.S. 500, 504 (2003). Ineffective assistance of counsel, if shown, automatically meets the cause element for procedurally defaulted claims. *Murray,* 477 U.S. at 488.

To prevail on an ineffective assistance of counsel claim, the movant has the burden of showing:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial

> whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). The movant must show that he was actually prejudiced by his counsel's deficient performance. *Id*.

Movant argues that his trial counsel was ineffective because he did not object to the government sentencing him twice under the same statute. As discussed above, this claim is without merit. There was no error in the sentencing.

Additionally, movant argues that his trial counsel was ineffective for withdrawing his request for a multiple conspiracies jury instruction. Also, as discussed in the claim of improper variance, there was no error. Trial counsel vigorously advocated for movant; the record is replete with objections and motions.

Following the trial, counsel for movant filed an Eighth Amendment Constitutional Challenge to Sentencing and Motion to Adjourn Sentencing and Brief. (D/E #108). Counsel stated that 30 years imprisonment for the Molotov cocktail and five years imprisonment for the firearm were "ridiculous and harsh beyond imagination." (D/E #108). Further, counsel asked for a court appointed investigator to review court records in other jurisdictions on whether the 30-year sentence for the Molotov cocktail violates the Eighth Amendment.[10] (D/E #108).

Movant argues that both trial and appellate counsel were ineffective. On appeal to the Sixth Circuit, appellate counsel for movant argued that the district court erred in not giving jury instructions for the lesser offense of simple possession and for improper vouching for a government witness. *U.S. v. Cruz*, 270 Fed.Appx 393 (6th Cir. 2008); (D/E #144). The appellate court rejected that claim and held that movant did not meet the qualifications for jury instructions

---

[10] The ruling from this motion does not appear on the docket.

of simple possession because the evidence did not support simple possession and the difference between conspiracy and possession were not sufficiently disputed. (D/E #144). For the improper vouching, the Sixth Circuit held that the objection to vouching was not correct since vouching relates to the prosecutor and not the witness's statements. Thus, appellate counsel raised substitute arguments. The fact that he did not prevail does not make his claim ineffective.

These are not sufficient to show that counsel was ineffective. Counsel does not have to make a futile objection or have a trial strategy approved by the movant to be considered effective. Further, movant's trial counsel did not make any errors that created an unfair trial with an unreliable result. Thus, movant was not denied due process and the habeas petition does not merit relief.

## V. CONCLUSION

For the reasons stated above, the Court recommends that the movant's Motion to Vacate, Set Aside, or Correct Sentence and Amended Motion to Vacate be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                        S/Virginia M. Morgan
                        Virginia M. Morgan
                        United States Magistrate Judge

Dated: November 18, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and Jose Cruz via the Court's ECF System and/or U. S. Mail on November 18, 2009.

                        s/Jane Johnson
                        Case Manager to
                        Magistrate Judge Virginia M. Morgan